## STATE *vs.* JOHN FAGAN.

*Indictment—Unlawful Sale of Intoxicating Liquors—With License·*
*—Without License—Averment—Evidence—Licensee on*
*Approval of Court—Special License—Sale in*
*Violation of License—Liability of Licensee*
*for Sales by Servant—Implied Author-*
*ity—Without Authority—Explana-*
*tion of Different Dates on License*
*—Sale before License—Pre-*
*sumption of Innocence—*
*Reasonable Doubt.*

1. An indictment of a person licensed to sell intoxicating liquors in. quantities less than one quart to be drunk *on* the premises, charging him with unlawfully selling intoxicating liquors, to wit: whiskey, in a quantity less than one quart to be drunk *off* the premises, will not be quashed. because it fails to aver the sale without a license.

2. Evidence, apparently material, may, in the discretion of the· Court, be admitted, against objection, subject to be stricken out, upon application, if subsequently shown to be immaterial.

3. The Court of General Sessions has distinguished between the sale· of intoxicating liquors, in violation of the law applicable to a license· granted, and a sale in violation of the law applicable to a sale without a· license.

4. A person may be authorized, on approval of the Court, to sell intoxicating liquors in quantities less than a quart to be drunk on the· premises, and, having procured such a license, he may apply to the Clerk of the Peace for a special license, without the approval of the Court, to sell. in quantities less than a quart to be drunk off the premises.

5. When a person has a license to sell intoxicating liquors in quanti- ties less than a quart to be drunk on the premises, and he has not procured a special license to sell in such quantities to be drunk off the premises, if he sells in a manner authorized only by such special license, such a sale would, under the law, be a sale without license.

6. The holder of a license to sell intoxicating liquors, in quantities: less than one quart to be drunk on the premises is criminally liable for a sale made by his agent or servant, in violation of the law respecting such license.

7. A licensee with authority to sell intoxicating liquors in a certain manner, conducting his business by an agent or servant, is criminally·

liable, *prima facie*, for a sale made by such agent or servant, in violation of the law respecting sales made without a license.

8.   A licensee authorized to sell intoxicating liquors is not criminally liable for sales made by his agent or servant in violation of the law respecting sales without a license, if made by such agent or servant without the knowledge or authority, or against the instructions of the licensee.

9.   When a person without a license is charged with unlawfully selling intoxicating liquors, sold by his agent or servant, it must satisfactorily appear that such agent or servant did so with the knowledge and by the authority of his employer before criminal liability will attach to the employer for the wrong-doing of his agent or servant.

10.   Where a person holds a license for the sale of intoxicating liquors which bears a teste date differing from another and subsequent date, stamped on the license, evidence of the officer issuing the license, and his regular docket entries respecting the issuance of such license, are admissible to explain the date stamped on the license, and to show the date of its issuance.

11.   A person obtaining a license after the date on which he is charged with unlawfully selling intoxicating liquors without a license, the teste date of the license being prior to the date of the alleged sale, cannot defend the sale under such license, though made in the manner authorized by such license.

12.   An accused is presumed to be innocent until he is proven guilty beyond a reasonable doubt.   By reasonable doubt is meant not a mere fanciful, speculative or indefinable doubt, but such a doubt as reasonable men would entertain under all the facts and circumstances of the case.

Del. cases cited: *State vs. Polk*, 6 *Penn.* 456; *State vs. Caldwell*, 1 *Mar.* 155;   *State vs. Burchinal*, 2 *Harr.* 528; *State vs. Peo*, 1 *Penn.* 525; *State vs. Mundy*, 1 *Boyce* 40,                    (74 *Atl.* 377).

Del. case distinguished: *State vs. Peo.*, 1 *Penn.* 525.

Del. statute: *Sec.* 14, *Chap.* 418, 14 *Laws of Del.*

(*November* 5, 1909.)

Judges WOOLLEY and HASTINGS sitting.

*Josiah O. Wolcott*, Deputy Attorney-General, for the State.

*William F. Kurtz* for the defendant.

Court of General Sessions, New Castle County, November Term, 1909.

INDICTMENT (No. 102 September Term, 1909,) FOR UN-LAWFULLY SELLING INTOXICATING LIQUOR, to-wit, whiskey, in quantities less than one quart *to be drunk off the premises* the defendant having only a license to sell liquors in like quantities *to be drunk on the premises.*

The indictment was as follows: "New Castle County, ss. September Term, 1909.

"The Grand Inquest for the State of Delaware,
And the body of New Castle County, on their oath and affirmation, respectively, Do PRESENT, That John Fagan late of New Castle Hundred, in the County aforesaid, on the first day of July in the year of our Lord one thousand nine hundred and nine with force and arms at New Castle Hundred in the County aforesaid, in a certain house there situate to-wit: In a certain house in New Castle in school District Number forty-five in the Hundred aforesaid and in which said house the business of selling intoxicating liquors was then and there carried on; he the said John Fagan then and there being the tenant and occupant of said house, he the said John Fagan then and there having a proper license to sell intoxicating liquors according to law only in quantities less than one quart to be drunk on said premises, did then and there unlawfully sell intoxicating liquor to-wit, whiskey to one Edward H. Williams in a quantity less than one quart to be drunk off said premises, against the form of the Act of the General Assembly, in such case made and provided, and against the ·peace and dignity of the State.

> "ANDREW C. GRAY, *Attorney-General,*
> By JOSIAH O. WOLCOTT, *Depy. Atty. General.*"

Counsel for the defendant moved to quash the indictment because it failed to aver the sale without a license.

WOOLLEY, J:—We hold that the case of *State vs. Polk,* 6

*Pennewill* 456, governs this case; therefore the application to quash the indictment is refused.

At the trial, John L. Wright, Deputy Clerk of the Peace, was produced as a witness on behalf of the State and identified the license under which the defendant was selling liquor in quantities of less than one quart to be drunk on the premises, as having been issued to the defendant.

*Mr. Kurtz*, on cross examination, handed two papers which were licenses, to the witness, and proved by him that the same were issued to John Fagan by the Clerk of the Peace for New Castle County. The papers were marked for identification "A" and "B."

The State proved the sale of a half-pint of whiskey contained in a sealed bottle to one Edward H. Williams, by the bartender of the defendant at the latter's place of business at New Castle on the date laid in the indictment. The said whiskey was carried away from the premises in the original package without being opened and was identified by another witness as being the whiskey delivered to him by said Williams on the day of the alleged sale. The State then rested.

*Kurtz*, for the defendant, moved that the Court instruct the jury to find the defendant not guilty for the reason, that there was no evidence to show that the defendant knew of, or acquiesced in, or was benefited by, or connected with the alleged sale of whiskey as charged in the indictment.

*The Deputy Attorney General* replied, citing *State vs. Burchinal*, 2 *Harrington*, 528.

WOOLLEY, J.:—The Court has given very deliberate consideration to the motion that the jury be charged to bring in a verdict of not guilty. For reasons which may appear later, the motion is denied. You may proceed with the case.

*George McGrory*, the bartender of the defendant, was produced, as a witness on behalf of the defendant, and was asked by Mr. Kurtz the following question:

Q. With relation to your employment, what, if anything did Mr. Fagan tell you about the conduct of his saloon?

(Objected to by Mr. Wolcott, Deputy Attorney General as immaterial; citing *Norcker vs. People of State of Illinois*, 91 *Illinois* 494; *State vs. McConnell*, 90 *Iowa* 197; *State vs. Stewart*, 31 *Maine* 515; *Carrol vs. State*, 63 *Maryland* 551; *State vs. Caldwell*, 1 *Marvel* 155; *People vs. Langwell*, 120 *Michigan* 311.)

*Mr. Kurtz* cited in support of the admissibility of the testimony offered: 1 *Bishop's New Criminal Law, Sec.* 219; *State vs. Hayes*, 67 *Iowa* 27; *Commonwealth vs. Nichols*, 51 *Mass.* 259.

WOOLLEY, J., delivering the opinion of the Court:

The materiality of the question propounded and objected to as immaterial, depends upon the rule of law to be applied in this case, involving the criminal liability of a principal licensee for the unlawful act of his agent or servant.

The case at bar is distinguished from the case of the *State vs. Peo*, 1 *Penn.* 525, and from other cases where the holder of a license is indicted for violating the provisions of *Section* 14, *Chapter* 418 *of Volume* 14, *Laws of Delaware*, such as the sale of liquor to minors, to insane persons, to habitual drunkards, or the sale of liquor upon the Lord's day or upon Election day, in that the defendant is here indicted not for selling liquor in violation of a license, but for selling liquor without a license within the sense and meaning of the law recently laid down in the case of the *State vs. Mundy*.

This case, like the case of the *State vs. Mundy*, 1 *Boyce* 40 (74 *Atl.* 399), is distinguished from the ordinary case where the defendant is charged with the offense of selling liquor without a license, in that the defendant though charged with selling liquor without a license, was in fact a licensee having authority to sell liquor in a certain place, in a certain manner and in certain quantities. In other words, he was licensed to sell liquor in the place and manner prescribed in quantities less than one quart to be drunk on the premises, and he is indicted for the specific offense of selling liquor in quantities less than one quart to be drunk off the premises, or, in other words, for selling liquor without a license.

It appears that in the conduct of his business under the license granted him to sell liquor to be drunk on the premises, the defendant employed a bartender who, it is alleged, while acting in such capacity, sold liquor to be drunk off the premises.

By the question asked the witness, it is apparent that the defendant seeks to show that the unlawful act of the bartender was without authority or in violation of the instructions of the defendant, and the State objects to the question on the ground that the answer would not relieve the defendant from criminal liability for his bartender's unlawful act, claiming that the principal is liable for the act of his agent or servant, whether he expressly or impliedly authorized it or not.

After a full and careful examination of all the authorities cited by the Attorney-General, we find but one that applies to the criminal liability of a master for his servant's act of selling liquor without a license, the remaining cases being in support of the rule laid down in the case of the *State vs. Peo*, (1 *Penn.* 525) with respect to the violation of a license granted, which has been distinguished from this case. By an examination of the authorities cited by the counsel for the defendant, we find several lines of cases attaching to a defendant differing grades of liability for his servant's acts, according as statutes regulating the sale of liquor are strict or liberal.

Applying the principles of law, as we find them, to the language and the spirit of our statute, we hold that as the defendant was the recipient of a license from the State, giving him the authority and the privilege to sell liquor in a certain manner, and as he saw proper to conduct his business under that license by the agency of a bartender, the defendant as principal must be held *prima facie liable* for the sale of liquor made by his agent in a manner different from that authorized by his license and beyond and without authority of a license.

We further hold, that as the defendant is not charged with a violation of his license in the sense of the rule laid down in the case of *State vs. Peo*, he may avoid this *prima facie* liability by producing evidence in rebuttal that the act of his bartender was without his authority or knowledge and against his instructions.

When a principal is charged with selling liquor by an agent or servant, not in violation of a license, but without a license, and a conviction is sought, it must appear expressly, or by implication such as that indicated in this case, that he gave authority to or had knowledge of his agent's acts, just as in any other case where criminal responsibility is sought to be attached to a principal for the wrong-doing of his agent.

*State vs. Peo*, 1 *Penn.* 525; *Bishop's New Criminal Law*, *Sec.* 219; *Commonwealth vs. Nichols*, 51 *Mass.* 259; *In re Berger*, 120 *N. W.* 960.

The objection to the question is overruled.

*Mr. Kurtz,* counsel for defendant, offered in evidence the license which had been identified by the Deputy Clerk of the Peace, and marked "A for identification." This was objected to by the Deputy Attorney-General as immaterial, and he argued that upon the face of the license there were two dates, one of January 30, 1909, being the teste date, and the other a stamp date of July 24, 1909; that if it should appear that the license was not issued until July 24, 1909, it would not be admisssible and the State is entitled to have such explanation made before it is admitted in evidence.

WOOLLEY, J.:—We rule that this paper is admitted in evidence at this stage, subject to such disposition of it as we may think advisable after hearing further testimony that may be offered in the case.

When the defendant rested, the State recalled John L. Wright, Deputy Clerk of the Peace, who testified as follows:
*By Mr. Wolcott:*

Q.   I hand you "Defendant's exhibit A ," (being the alleged license issued to the defendant authorizing the sale of intoxicating liquors in quantities less than one quart to be drunk off the premises), bearing the teste date of January 30, 1909, and will ask you what the stamped date "July 24th, 1909" means or signifies?

(Objected to by Mr. Kurtz as an attempt to vary a written paper by parol evidence; stating that the words and figures referred to were part of the license, and there was no ambiguity about the same that called for any explanation. Question withdrawn temporarily.)

Q.   I will ask you whether those words and figures I have mentioned were on there when it was issued by the Clerk of the Peace's Office? A.   Yes, sir; they were.

Q.   Now I will ask you what they mean or signify?

(Objected to by Mr. Kurtz on the same ground as before stated.)

WOOLLEY, J.:—The rule of law which directs the admission of records and instruments under the official seal of such an officer as the Secretary of State, contemplates such records and instruments as upon their face appear to be regularly and properly signed and sealed.   This instrument contains upon its face two things which at least do not explain or speak for themselves. One is the signature of William T. Smithers as Secretary of State made as of January 30, 1909, and the other is a stamped date— "July 24th, 1909." As the whole of this instrument has been tendered and admitted in evidence, it is proper to hear testimony to ascertain whether there is in fact any irregularity and to explain the meaning of the stamped date which does not explain itself, so that the proper evidenciary value of the exhibit may be ascertained and given to the jury, and to avoid giving to it a value which in fact or in law it might not have.

By obtaining a license after the date upon which he is charged with selling liquor without a license, and bearing a teste date prior to that upon which he is charged with the unlawful sale, the defendant cannot use such a license as evidence in his defense.

It is therefore proper to show the date upon which the special license was in fact issued as distinguished from the date of its teste, so that the jury may be informed whether the act for which the defendant is indicted was committed with or without the authority and protection of the special license.

Evidence—Opinion—Charge.

The objection was overruled.    Witness answered:

A.    The date of the issuance of the license.

Q.  I will ask you whether "Defendants Exhibit A" was had by John Fagan, this defendant, on July first or second of this past year?

. (Objected to by Mr. Kurtz.   Objection overruled.)

A.    It was not.

Q.    Are you speaking from the record?    A.    Yes, sir.

Q.    Do you base that statement on the record of the Clerk of the Peace's office of this county?    A. Yes, sir; on the record.

*Mr. Wolcott*:    This license, "Defendant's Exhibit A," was admitted subject to objection and subject to a motion to strike out.    I now move, that "Defendant's Exhibit A" be stricken out as evidence in this case.

(Objected to by Mr. Kurtz, counsel for defendant.)

WOOLLEY, J.:—Let "Defendant's exhibit A" be stricken out as evidence in this case.   The decision of the Court does not go to the validity of the license, but to the day it was issued, as evidence, it appearing to have been issued to the defendant after the date of the alleged sale.

WOOLLEY, J., charging the jury:

Gentlemen of the jury:—The Court declines to accede to the prayer of the defendant's counsel, to give you binding instructions and therefore will proceed to charge you as to the bearing of the law upon the evidence.

John Fagan, the defendant in this case, has been indicted for selling, on the first day of July, 1909, in a certain school district in this county, whiskey, to one Edward H. Williams, in a quantity less than one quart to be drunk off the premises.

It is provided by statute that "no person by himself, his agents or servants, directly or indirectly, shall sell any intoxicating liquor"—Upon that much of the law is founded all the law that follows with respect to the selling of liquor.   Then the statute proceeds and says, "except as herein provided."

There are a multitude of ways of selling liquor which are in violation of law. The courts of this State have distinguished between the sale of liquor in violation of the law which applies to the license granted, and the violation of the law which applies to the sale of liquor without a license; and it is because of that distinction, and the fact that in this case the defendant is charged with selling liquor without a license, while in fact he had a license of a certain kind, and that it has developed that the liquor when sold was dispensed through an agent instead of through the principal,—that some confusion may possibly have arisen between the testimony as stated by the witnesses and the law as announced by the Court during this trial. If there be confusion, itis because of the dual character of the testimony, viz.,the sale of liquor without a license when the defendant had a license, and the sale of liquor by an agent, when the principal was the licensee.

The Court will briefly and simply state to you the law.

In the first place, the law provides that a man may be licensed by the power of the Court, to sell liquor in quantities less than a quart to be drunk on the premises. That is the ordinary saloon license, as the ordinary man understands it. Then there is another law which provides that a man having that kind of a license from the Court, may apply to the Clerk of the Peace and get another kind of a license, without the approval of the Court which will give him the prvilege of selling liquor in quantities less than one quart to be drunk off the premises. A man may have both licenses. Then he is protected in selling liquor in quantities of less than a quart to be drunk both on and off the premises If he has a license to sell liquor in such quantities to be drunk on the premises, and has no license to sell liquor in such quantities to be drunk off the premises, and he does sell liquor to be drunk off the premises, then, under the law, he is selling liquor without a license.

In respect to the usual kind of a license which the Court grants, with which you are most familiar, the law lays down many inhibitions; viz., that the licensee shall not sell liquor to minors, that he shall not sell to insane persons, that he shall not

Charge,

sell to habitual drunkards, that he shall not sell on the Lord's Day, or on election day. That law applies to a licensee who has received a license from the Court. Ordinarily there would be no distinction between a man who sells liquor without a license—having no license of any kind—and a man who sells liquor in a certain way without a license—having a license of a certain kind. And this is where our difficulty has come in; and we say to you that a man having a license which is given him by the approval of the Court who violates the law with respect to selling liquor without a particular kind of a license—such as a license for the sale of liquor in quantities less than a quart to be drunk off the premises—is guilty of violating the law against selling liquor without any license. But when the law gives to him the privilege of administering the business of selling liquor in certain quantities, it gives to him a certain benefit, a certain privilege or a certain right, which under the general inhibition of the statute is withheld from other people, and therefore it places upon him a certain responsibility and a certain corresponding liability. The Court has ruled in this case, and so charges you now, that when a person having a license sells liquor without and beyond the authority of another kind of a license, he sells it just as if he did not have the first license granted him by the Court. If he thus sells liquor through an agent, such as a bartender or one employed by him in the conduct of his business, the law presumes that the act of the agent is the act of the principal, and the principal—namely, the licensee—is *prima facie* guilty of the sale of liquor without a license. In other words, if the State shows to you that the agent sold the liquor without authority of the licensee, without showing at all that the principal knew of or authorized the sale of the liquor, the State has *prima facie* proven its case.

But it is the right of the defendant to rebut that *prima facie* case set up by the State and show as a matter of fact that the agent, or bartender, did not have the authority of the master or the licensee to sell liquor without a license; and he may show, if he choose and if he can, that the act of the agent was without his knowledge and against his express instructions. But the

burden is upon the defendant to do that, because all the State has to do is to show a *prima facie* case, and when that is done the burden of satisfying you that the act of the agent was an act without the authority of, or knowledge of, or against the instructions of the principal, rests upon the defendant.

The Court says to you that in this case there is no evidence that the defendant has a license of a special character which would authorize him to sell liquor in the way he is charged to have sold it and which would protect him in that sale, as the evidence tendered upon that point by the defendant has been rejected and ruled out by the Court.

There is one charge which the Court always gives the jury, and that is that the prisoner is presumed to be innocent until he is proven guilty, and that proof must be beyond a reasonable doubt; by which is meant not a mere fanciful, speculative or indefinable doubt, but such a doubt as reasonable men would have under all the facts and circumstances of the case.

It is for you to determine whether or not the bartender was in this case the agent or servant of John Fagan, the principal or the defendant. It is likewise for you to determine, after satisfying yourselves as to the agency of the bartender, whether or not the State has made a *prima facie* case of the character here indicated to you; and if it has, and there is no explanation made by the defendant, then your verdict should be guilty. The next thing you are to determine is, whether or not the defendant has convinced you satisfactorily that the act of the agent, that is, the bartender, was without the defendant's knowledge or consent, or against his instructions and authority; or in other words, has the defendant satisfactorily to your minds overcome the *prima facie* case such as is presumed in favor of the State under the ruling before indicated to you. If he has, your verdict should be not guilty.

Verdict, guilty.